UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| US CAPITAL GLOBAL INVESTMENT MANAGEMENT, LLC f/k/a US CAPITAL INVESTMENT MANAGEMENT, LLC, a limited liability company, and US CAPITAL PARTNERS, INC., a corporation | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | No. 1:22-CV-626-DAE |
|      Plaintiffs, | | |
| vs. | | |
| NOBLE CAPITAL GROUP, LLC, AND NOBLE CAPITAL FUND MANAGEMENT, LLC, | | |
|     Defendants. | | |

## ORDER ADOPTING IN PART, REJECTING IN PART U.S. MAGISTRATE JUDGE LANE'S REPORT AND RECOMMENDATION AND GRANTING DEFENDANTS' MOTION TO DISMISS

Before the Court is U.S. Magistrate Judge Lane's Report and

Recommendation ("Report"), issued on June 29, 2023, concerning Defendants

Noble Capital Group, LLC and Noble Capital Fund Management, LLC's

(collectively, "Noble Capital") Motion to Dismiss.  (Dkt. # 17.)  Plaintiffs US

Capital Global Investment Management, LLC f/k/a US Capital Investment

Management, LLC, a limited liability company, and US Capital Partners Inc., a

corporation (collectively, "Capital Global") filed objections on July 14, 2023.

1

(Dkt. # 22.)  Noble Capital responded to the objections on July 21, 2023.  (Dkt. # 23.)

The Court finds this matter suitable for disposition without a hearing. After careful consideration, the Court—for the reasons that follow—**ADOPTS IN PART, REJECTS IN PART** Judge Lane's Report and **GRANTS** Noble Capital's Motion to Dismiss.  (Dkts. # 17, 10.)

## BACKGROUND

The instant action is one of many disputes between Capital Global and Noble Capital resulting from their soured relationship after establishing a joint real estate income fund (the "Fund").  (Dkt. # 8.)  The parties signed several agreements in 2016 and 2017 creating the Fund, under which Capital Global would administer and identify investors for the Fund while Noble Capital would provide loans to the real estate entrepreneurs.  (Dkts. ## 8-1; 8-2; 8-3.)  The subject of this litigation – the fifth suit between the parties in the Western District of Texas – is the alleged "scheme of publishing defamatory accusations against" Capital Global by Noble Capital in the other lawsuits.  (Dkt. # 8 at 6.)  The Amended Complaint, filed on September 26, 2022, asserts claims of malicious prosecution, abuse of process, and breach of contract.  (Id.)  Judge Lane issued a Report on June 29, 2023, recommending that Noble Capital's Motion to Dismiss the Amended Complaint be granted.

APPLICABLE LAW

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.  See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. Thomas v. Arn, 474 U.S. 140, 151 (1985).  A district court need not consider "[f]rivolous, conclusive, or general objections."  Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Recommendation is clearly erroneous or contrary to law.  United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

DISCUSSION

Judge Lane made the following findings in his Report: (1) that Texas law governs Capital Global's tort claims; (2) that Capital Global's malicious prosecution claim should be dismissed for failure to adequately plead the fourth,

fifth, and six elements of the claim; (3) that Capital Global's abuse of process claims (counts two and three) should be dismissed; and (4) that each of Capital Global's breach of contract (counts four and five) and indemnification claims (counts six and seven) should be dismissed.  (Dkt. # 17.)  Capital Global objected to all of Judge Lane's recommendations except the findings of dismissal for counts one and six.  (Dkt. # 22.)  Thus, the Court reviews all of Judge Lane's recommendations de novo, but reviews the malicious prosecution and breach of contract indemnification (count six) claims only for clear error.  See 28 U.S.C § 636(b)(1)(C).

I.      Choice of Law

Judge Lane concluded that Texas law governs Capital Global's tort claims.[1]  In so determining, Judge Lane reviewed each of the agreements signed by the parties, all of which contained the following provision: "This Agreement shall be governed by the law of the State of California."  (Dkts. ## 8-1; 8-2; 8-3.) Capital Global objects to Judge Lane's interpretation of this provision as indicating that "the parties intended to restrict the clause to the interpretation or construction of the agreement itself."  (Dkt. # 17 at 5.)  Capital Global urges that a

---

[1] Judge Lane also found that California law applies to the contract claims, but both parties agreed to this point prior to the Report's issuance.  Accordingly, though the Court need not weigh in, the undersigned agrees with the parties for the reasons articulated above.

determination of the parties' intent requires a court to examine the entire contract, and that had Judge Lane done so, he would have seen that the parties' dispute resolution clause "intended only that California 'substantive and procedural' law will apply to 'any dispute or claim, without reference to any conflict-of-law provisions of any jurisdiction." (Dkt. # 22 at 4.)  Noble Capital responds that even if the Court considers this new argument, the dispute resolution clause only ensures that California law applies to arbitration, not tort claims raised in federal court. (Dkt. # 23 at 6.)

   The Court agrees that "issues raised for the first time in objections to a magistrate's report are generally not properly before the district court."  Hale v. Young, 584 F. App'x 246, 247 (5th Cir. 2014).  Regardless, the dispute resolution clause Capital Global relies on instructs only that an *arbitrator* apply California law, not a federal court.  (See Dkt. # 8-1 at 4.)  Because the parties did not submit this dispute to arbitration, the dispute resolution clause is irrelevant.  Thus, as did Judge Lane, this Court looks to the governing law provision cited above.  The undersigned similarly finds that the words "This Agreement" – without reference to any tort claims arising out of it – should be construed narrowly to read as pertaining only to the interpretation of the agreement itself.  See Benchmark Elecs., Inc. v. J.M. Huber Corp., 343 F.3d 719, 726 (5th Cir. 2003) (concluding that a clause providing that "the 'Agreement shall be governed by, and construed in

accordance with, the internal laws of the State of New York'" was narrow and did not encompass tort claims); see also Kreger v. Gen. Steel Corp., No. 7-575, 2010 WL 290773, at *12 (E.D. La. July 19, 2010) (finding the same under similar facts).[2]

Because the contracts are silent as to the application of law to tort claims, Texas law instructs that the Restatement's "most significant relationship" test applies.  Hughes Wood Prods., Inc. v. Wagner, 18 S.W.3d 202, 205 (Tex. 2000).  Section 145(2) provides that the factors to be considered when applying the general choice of law principles to tort cases include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred, (3) the domicil, residence, nationality, place of incorporation, and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered.  Restatement (Second) of Conflicts § 145(2) (Am. Law. Inst. 1971).

Capital Global's tort claims for malicious prosecution and abuse of process arise out of lawsuits filed in Texas, meeting the first two prongs of the Restatement factors.  (See Dkt. # 8 at 20, 22.)  Capital Global are California corporation and limited liability companies with no ties to Texas beyond their relationship with Noble Capital, which are limited liability companies with their

---

[2] Texas choice of law rules apply because this court is sitting in diversity.  Spence v. Glock, Ges.m.b.H., 227 F.3d 308, 311 (5th Cir. 2000).

principal places of business in Austin, Texas.  (Id. at 2-3.)  On the whole, the Court

agrees with Judge Lane's conclusion that, considering that the location of and

conduct resulting in the injury is Texas, the parties have a relationship centered in

Texas, and at least one of the parties is a Texas business, Texas law applies to

Capital Global's tort claims.

II.   Malicious Prosecution

Because Capital Global did not object to Judge Lane's

recommendation to dismiss its malicious prosecution claim, the Court reviews this

finding only for clear error.  Wilson, 864 F.2d at 1221.  Judge Lane determined that

Capital Global failed to adequately allege the malicious prosecution claim

elements of probable cause, termination in the plaintiff's favor, and special

damages.[3]  (Dkt. # 17 at 8-11.)  Upon review, the Court finds no error in any of

these conclusions.

First, the Amended Complaint indeed recites only conclusory

allegations of Noble Capital's lack of probable cause in the previous lawsuit.  (See

---

[3] To state a valid claim of relief for malicious prosecution, a plaintiff must show (1) the institution or continuation of civil proceedings against the plaintiff; (2) initiated by the defendant; (3) with malice in the commencement of the proceedings; (4) which proceedings lacked probable cause; (5) that were terminated in the plaintiff's favor; and (6) resulted in special damages.  Duzich v. Advantage Fin. Corp., 395 F.3d 527, 529 (5th Cir. 2004) (citing Tex. Beef Cattle Co. v. Green, 921 S.W.2d 203, 207 (Tex. 1996)).

Dkt. # 8 at ¶ 63 ("The Defendants . . . lacked probable cause to file . . .").)  This Court similarly indulged Capital Global's request to "embark a meandering journey through nearly the entire factual background section of the Amended Complaint."  (Dkt. # 17 at 8.)  Like Judge Lane, the undersigned finds no connection between the facts alleged and the probable cause element.

The Court similarly finds no error in Judge Lane's determination that enforcement of an arbitration provision does not equate to termination in a plaintiff's favor as required to meet the fifth element of a malicious prosecution claim.  (Id. at 9.)  "To become a prevailing party, a plaintiff must obtain, at an absolute minimum, actual relief on the merits of [the] claim."  Howard v. Weston, 354 F. App'x 75, 77-78 (5th Cir. 2009) (quoting Farrar v. Hobby, 506 U.S. 103, 116 (1992) (O'Connor, J., concurring)).  Because arbitration was compelled in the case over which Capital Global raises its malicious prosecution claim, there was no "judgment on the merits" or "judicial pronouncement" to create prevailing party status for Capital Global.  See Farrar, 506 U.S. at 112.

Finally, the Court agrees with Judge Lane that the Amended Complaint fails to allege special damages.  (Dkt. # 17 at 12.)  Special damages are more than "ordinary losses incident to filing a civil suit, such as inconvenience, embarrassment, discovery costs, and attorney's fees."  Tex. Beef Cattle Co. v. Green, 921 S.W.2d 203, 208 (Tex. 1996).  The plaintiff must allege some sort of

8

"physical interference with a party's person or property in the form of an arrest, attachment, injunction, or sequestration." Id. at 209. Such pleadings are absent from the Amended Complaint. (See Dkt. # 8.) Accordingly, the Court adopts Judge Lane's recommendation that Capital Global's malicious prosecution claim be dismissed.

III.    Abuse of Process

        The Court next conducts a de novo review of Judge Lane's conclusion that Capital Global failed to plead the requisite elements of its abuse of process claims. (Dkt. # 17 at 13.) In Texas, abuse of process claims require a showing that: (1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process; and (3) damage to the plaintiff resulted from the illegal act. Bossin v. Towber, 894 S.W.2d 25, 33 (Tex. App. – Houston [14th Dist.] 1994, no pet.). "It is critical to a cause of action for abuse of process that the process be improperly used *after* it has been issued." Id. If wrongful intent or malice caused the process to be issued initially, the claim is instead one for malicious prosecution. Id. Moreover, if the process is used for the purpose for which it is intended, even if accompanied by an ulterior motive, no abuse of process occurs. Id. The process must also "have been used to accomplish an end which is beyond the purview of

the process and compel a party to do a collateral thing which he could not be compelled to do." Id.

Capital Global raises two abuse of process claims, each premised on a different lawsuit initiated by Noble Capital in this District. (Dkt. # 8.) The first claim, count two, alleges that in Noble Capital Grp. LLC, and Noble Capital Fund Mgmt., LLC v. US Capital Partners, Inc., Jeffery Sweeney, Charles Towle, and Patrick Steele, No. 19-CV-1255 (W.D. Tex.) (the "1255 action"), Noble Capital "filed and pursued the lawsuit with malice . . . for [Capital Global's] failure to capitulate to the Defendants' demands[.]" (Dkt. # 8 at 21.) Capital Global objects to Judge Lane's finding that its pleadings fail to allege illicit use of process *after* filing. (Dkt. # 17 at 15.) Capital Global avers that the Amended Complaint "identifies explicitly [the 1255 action] . . . [and that] defendants intentionally attached a copy of an interim 'Emergency Arbitrator's Award' as an exhibit to their pleading in that case, which they knew was confidential from public disclosure." (Dkt. # 22 at 7.) But again, abuse of process claims require a showing that the defendant misused the process *after* the filing of the complaint. Bossin, 894 S.W.2d at 33. The arbitrator's award was attached to the filing of the complaint in the 1255 action and was thus simultaneous with, rather than after, filing.

Further, Capital Global's reliance on the fact that "defendants later conceded the confidentiality of the document and agreed to seal their Complaint

10

from public view" backfires.  (Dkt. # 22 at 7.)  Even if "wrongful intent or malice

caused the process to be issued initially," no claim for abuse of process exists.

Bossin, 894 S.W.2d at 33.  Thus, even crediting Capital Global's argument that

Noble Capital used litigation to intentionally publicize a confidential document, the

very fact that Noble Capital later – after process – agreed to seal the exhibit

demonstrates that its use of the process was in fact proper.  Accordingly, the Court

adopts Judge Lane's recommendation to dismiss this count.

        The second claim, count three, focuses on another of Noble Capital's

suits against Capital Global in this District: Noble Capital Fund Mgmt., LLC,

TXPLCFQ, LLC, TXLCFNQ, LLC v. US Capital Global Inv. Mgmt., LLC, No.

20-CV-1247 (W.D. Tex.) (the "1247 action").  (Id. at 22.)  Capital Global alleges

that in this case, a declaration from Chris Ragland ("Ragland") supporting Noble

Capital's motion for a preliminary injunction swore that Capital Global assured

Noble Capital that it would raise billions of dollars for the Fund and that its lack of

follow through amounted to fraudulent conduct.  (Dkt. # 8 at 22.)  Capital Global

essentially argues that Ragland's declaration is perjury, as they insist that no

Capital Global entity ever committed to raising any amount of capital and that the

contract contained explicit language stating that any representation not

memorialized could not be relied upon.  (Id. at 22-23.)  Capital Global also

incorporates the same arguments as in count two regarding the attachment of a confidential document. (Id.)

For the same reasons as in count two, Capital Global fails to state a valid claim for abuse of process. In the objections, Capital Global admits that "the amended complaint may better allege [] the abuse of process claim in Count II" and that "Count III relies on NCFM's repeated publication of the confidential document in support of NCFM's petition for injunctive relief filed after its complaint." (Dkt. # 22 at 9.) Whether Capital Global bases its claim on the declaration or the confidential document, there is no dispute that "the [declaration or document] w[ere] used for the purpose it was intended," i.e., to obtain a preliminary injunction. Bossin, 894 S.W.2d at 33-34. And regardless, an affidavit is not "process" for the purposes of an abuse of process claim. See id. at 34 ("Bossin argues that it was the trial *subpoena* that constituted the process that was abused, rather than the writ of attachment.") (emphasis original); see also Hunt v. Baldwin, 957 S.W.2d 121, 130 (Tex. App. – Houston [14th Dist.] 2001, no pet.) (finding that the use of a false affidavit to support a writ of execution did not support a claim for abuse of process).

Based on the foregoing, the Court adopts Judge Lane's recommendation that both counts of Capital Global's abuse of process claim be dismissed.

IV.   <u>Breach of Contract (Counts 4-7)</u>

        Finally, the Court turns to Capital Global's breach of contract claims. As discussed previously, the parties' agreements contemplate that they "shall be governed by the law of the State of California," and thus the Court applies California law to each claim.  (Dkts. ## 8-1; 8-2; 8-3.)  The elements of a breach of contract claim under California law are: (1) the existence of a contract; (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's breach; and (4) resulting damages to the plaintiff.  <u>Oasis W. Realty, LLC v. Goldman</u>, 51 Cal. 4th 811, 821 (2011).  Capital Global alleges four breach of contract claims: two based on the aforementioned suits filed by Noble Capital, the 1255 and 1247 actions, when they published the confidential arbitration document as exhibits to their complaints, and two premised on breach for failure to indemnify in accordance with the agreements.  (Dkt. # 8 at 23-26.)

   a.   <u>Breach of Contract (Counts 4 and 5)</u>

        Judge Lane analyzed Capital Global's two breach of contract claims together, considering that "the alleged conduct is substantially similar – indeed, it is identical except for in which lawsuit the non-final arbitration award was published."  (Dkt. # 17 at 17.)  The Court agrees with this assessment and likewise considers each claim conjointly.  The identical dispute resolution confidentiality provisions state:

*Confidentiality.* **The parties agree that the arbitration shall be confidential** and that no party shall disclose to any party who is not an officer, director, employee, or limited partner of a party any document filed at [JAMS or FINRA] or exchanged between the parties or testimony presented (or any summaries or quotations thereof) in connection with the arbitration **that is designated either on the document or on the testimonial record as "Confidential" (the "Confidential Information").** If, in connection with any judicial proceedings to modify, vacate or confirm any order or award, Confidential Information must be filed with any court, the party submitting such Confidential Information shall file such Confidential Information under seal and shall also file a motion with the court requesting that the Confidential Information remain under seal and no party shall oppose such request. The final award shall not be confidential.

(Dkts. ## 8-2 at 6; 8-3 at 6 (emphasis added).)  Judge Lane concluded that the Amended Complaint contained no allegation that Noble Capital published a document with a "Confidential" designation in either action, and thus Capital Global failed to demonstrate a breach.  (Dkt. # 17 at 18.)

Capital Global objects to this determination, drawing the Court's attention to the part of the provision stating that only the "final award" need not be kept confidential.  (Dkt. # 22 at 12.)  Capital Global insists that this provision, in addition to the clear statement that "[t]he parties agree that the arbitration shall be confidential" indicates that anything other than the final arbitration must be kept confidential.  (Id. at 13.)  Capital Global also posits that an interim non-final award rendered by an arbitrator is not a document filed or exchanged by the parties, and thus the designation obligation emphasized by Judge Lane is inapplicable.  (Id.)  Finally, Capital Global points to Noble Capital's later concession in the 1255

14

action that the document should have been kept confidential, as well as the Emergency Arbitrator's finding that the order was confidential.  (Id. at 14.)  Even after that decision, Noble Capital again published the non-final award without seal in the 1247 action nearly a year later.  (Id.)

Capital Global's breach of contract claim based on the 1255 action (count five) must be dismissed for the same reasons articulated by Judge Lane. The Amended Complaint contains no allegation that Noble Capital published a document with a "Confidential" designation, such designation being the only express indication in the provisions of what may not be disclosed.  The Emergency Arbitrator's later determination that the information was confidential is irrelevant to whether, at the time of filing, Noble Capital breached the terms of the agreement.  Regardless, the Amended Complaint makes no mention of this later decision.  Instead, it bases breach only on Noble Capital's filing of the documents with each action and Noble's later concession that it should be sealed.[4]  On these facts alone, the Court cannot find that Noble Capital breached the agreements.  See Zalkind v. Ceradyne, Inc., 194 Cal. App. 4th 1010, 1022 (2011.) ("The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of

---

[4] It is worth noting, however, that Noble Capital did not agree with Capital Global contention that the document was confidential, but "s[aw] no utility in litigating that issue," and therefore opted to seal the document.  (Dkt. # 11-1.)

contracting.  When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible.").  The Court therefore adopts Judge Lane's recommendation that count five be dismissed.

The Court likewise adopts Judge Lane's recommendation that count four be dismissed, but notes that the Emergency Arbitrator's decision finding that the arbitration document should be kept confidential – a fact absent from the Amended Complaint – occurred prior to Noble Capital's filing of the 1247 action. This extrinsic evidence may potentially support a finding of breach, at least for 12(b)(6) purposes.  Thus, acknowledging that the dismissal of count four hinges on facts that appear to exist, but are simply not provided in the Amended Complaint, the Court will grant Capital Global an additional opportunity to amend its Complaint to allege facts supporting this claim.

b.  <u>Indemnification (Counts 6 and 7)</u>

Capital Global's final two claims are each based on Noble Capital's alleged failure to indemnify them in the 1255 and 1247 actions, purportedly constituting a breach of the agreements.  (Dkt. # 8 at 25-26.)  Judge Lane recommended that both claims be dismissed.  (Dkt. # 17 at 23.)  Capital Global appears only to object to Judge Lane's recommendation that the Court dismiss

count 7, which is based on the 1247 action.[5]  The Court therefore conducts a de

novo review of Judge Lane's findings regarding count 7 (the 1247 action), but

reviews the determination that count 6 (the 1255 action) should be dismissed only

for clear error.

The 2016 Agreement at the heart of the 1255 action states:

> [Noble Capital] agrees that [Capital Global] and its shareholders, directors, officers, and employees will not have any liability (whether direct or indirect, in contract or tort or otherwise) to Company pursuant to this Agreement and hereby waives and releases them from any and all causes of action, defenses, setoffs, counterclaims and claims for relief of every nature.

(Dkt. # 8-1 at ¶ 7.)  Annex A of the 2016 Agreement continues:

> [Noble Capital] agrees to indemnify and hold harmless [Capital Global] and its affiliates . . . from and against any losses, claims, damages or liabilities related to, or arising out of or in connection with [Capital Global's] Engagement, and will reimburse each Indemnified Person for all reasonable, document, out-of-pocket expenses (including fees, charges and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement, whether or

---

[5] Capital Global states at the end of its objections that "[i]t follows that not only is Count 6 a valid cause of action for indemnification against NCFM based upon breach of contract, but also the relief that USCGIM is entitled to, including its attorney's fees incurred in defending Case No.: 1247." (Dkt. # 22 at 17.)  The Court understands the reference to Count 6, rather than Count 7, to be a typographical error.  The heading of the objection analysis references only Count 7, and in a footnote, Capital Global acknowledges that Judge Lane simultaneously considered its claim based on the 2016 Agreement in Count 6, but instead of making arguments as to why the conclusion as to Count 6 was incorrect, Capital Global emphasizes that the lack of reference to "whether or not resulting from third party claims" in the 2016 Agreement is "evidence that the distinction is material and intended to have a different application" than the 2017 Agreement.  (Dkt. # 22 at 16, n. 8).

not pending or threatened and whether or not any Indemnified Person is a party.

(Dkt. # 8-1 at 7.)

The 2017 Services Agreement at issue in the 1247 action states, in relevant part:

> [Noble Capital] agrees to indemnify and hold harmless [Capital Global] . . . from and against, and pay or reimburse [Plaintiff US Capital Global Investment Management] and such other indemnified persons for, and all actions, claims demands, proceedings, investigation, inquiries, liabilities, obligations fines, deficiencies, costs, expenses, royalties, losses and damages (whether or not resulting from third party claims) related to or arising out of the performance by [Noble Capital] of services under this Agreement, and to reimburse [Capital Global] and any other indemnified person for out-of-pocket expenses and reasonable legal and accounting expenses incurred by it in connection with or relating to investigating, preparing to defend, defending, asserting or prosecuting any actions, claims or other proceedings (including any investigation or inquiry) arising in any manner out of or in connection [sic] [Noble Capital's] performance of services hereunder . . . provided, however, that the Company shall not be responsible under this Section 5(a) for any claims, liabilities, losses, damages, or expenses to the extent that they are finally judicially determined (without right of further appeal) to result from actions taken by [Capital Global] . . .

(Dkt. # 8-2 at 3.)

California contract law provides that "[i]ndemnity generally refers to third party claims." Zalkind, 194 Cal. App. 4th at 1024. But "this general rule does not apply if the parties to a contract use the term 'indemnity' to include direct liability as well as third party liability." Id. (citing Dream Theater, Inc. v. Dream Theater, 124 Cal. App. 4th 547, 555 (2004)). "Determining the scope of an indemnity provision is a matter of contract interpretation, giving effect to the

parties' mutual intent based on the contract's clear and explicit language." Goodman Food Prods., Inc. v. Sunrise Foods Int'l, Inc., No. 2:21-CV-6518-SB-ADS, 2022 WL 2784396, at *7 (C.D. Cal. June 1, 2022) (citing Alki Partners, LP v. DB Fund Servs., LLC, 4 Cal App. 5th 574, 600 (2016)). Without "other indications of an intent to shift fees in first-party actions," the general inclusion of attorney's fees in an indemnity provision does not constitute a provision of attorney's fees for an action on the contract itself. Id. (citing Carr Bus. Enters., Inc. v. City of Chowchilla, 166 Cal. App. 4th 14, 20 (2008)).

Applying these principles, Judge Lane reviewed the 2017 and 2016 Agreements and concluded that neither contained a provision "specifically [] for attorney's fees *in an action on the contract*." (Dkt. # 17 at 22 (citing Alki Partners, 209 Cal. App. 5th at 600) (emphasis added).) Judge Lane also found that the parties explicitly contemplated the provision of attorney's fees in actions on the contract in the arbitration section, suggesting that they "knew how to include provisions for attorney's fees in the third-party and first-party contexts. Therefore, it is contrary to logic to read into the agreements an attorney's fees provision in the litigation context – a context not included in the agreements." (Id. at 22-23.)

At the outset, the Court finds no error in Judge Lane's conclusion that count 6 be dismissed. Neither the 2016 Agreement nor Appendix A provide express language or any other indication of an intent to shift attorney's fees in an

action on the contract; in fact, the language mirrors the "standard indemnity provision" at issue in Carr.  166 Cal. App. 4th at 20.  Thus, Judge Lane's determination that Noble Capital cannot be liable for breaching the indemnification clause is without error.  See Myers Bldg. Indus., Inc. v. Interface Techs., Inc., 13 Cal. App. 4th 949, 968 (1993) (finding that section 1717 of the California Civil Code, which governs the award of attorney's fees in contract suits, is only triggered when an agreement specifically provides for attorney's fees "in an action on the contract.").

Capital Global objects to Judge Lane's recommendation that count 7 be dismissed, emphasizing that the 2017 Agreement specifies Noble Capital would indemnify them "whether or not resulting from third party claims" and reimburse expenses incurred "with or relating to . . . any action . . . arising out of or in connection [sic] [Noble Capital's] performance of services hereunder."  (Dkt. # 22 at 16.)  Noble Capital responds in defense of Judge Lane's determination and posits that even if this Court agrees with Capital Global, the 2017 Services Agreement nonetheless excludes indemnity for claims resulting from actions taken due to Capital Global's fraud or knowing violation of applicable law.  (Dkt. # 23 at 12 (citing Dkt. # 8-2 at 3).)

Addressing a similar dispute, Zalkind found that because the agreement at issue there "d[id] not expressly limit the meaning of 'indemnify' to

third party claims," and contained a separate indemnification section for third-party claims specifically, the indemnification provision should be interpreted to include direct claims between the parties.  Id. at 1026, 1028.  Following Zalkind, California courts continue to emphasize that, where the indemnification clause "does not expressly limit its application to third-party claims," it covers direct claims between the parties.  Applied Gen. Agency, Inc. v. Chinese Cmty. Health Plan, No. G055669, 2019 WL 949258, at *4 (Cal. Ct. App. [4th Dist.] Feb. 27, 2019); see also Jennings v. AOS Grp., LP., No. B289681, 2019 WL 3406789 (Cal. Ct. App. [2nd Dist.] July 29, 2019).

Based on Zalkind and its progeny, this Court is inclined to find that the 2017 Service Agreement's express statement that Noble Capital would indemnify "whether or not resulting from third party claims" follows Zalkind's decree that if the contract does not outwardly limit its application to third-party claims, it covers direct claims between the parties.  (Dkt. # 8-2 at 3.)  Certainly, if the agreements made no such reference, the Court would find the cases relied on by Judge Lane more persuasive.  (See Dkt. # 17 at 20 (citing Carr and Myers for the proposition that indemnification clauses which promise indemnification for every claim arising out of performance of the contract deals only with third party claims).  The Court agrees that the parenetical "whether or not resulting from third party claims" parenthetical is not "specific" regarding the provision of attorney's

fees "in an action on the contract," but it does provide a sufficient "indication[] of an intent to shift fees in first-party action[s]."  <u>Goodman</u>, 2022 WL 2784396, at *7.

Nonetheless, the 2017 Agreement contains a clear carveout for proceedings "judicially determined (without right of further appeal)" to result from taken by Capital Global's "fraud, or knowing violation of applicable law."  (Dkt. # 8-2 at 3.)  Noble Capital instigated the 1247 action over Capital Global's alleged fraud.  <u>See</u> <u>Noble Capital Fund Mgmt.</u>, No. 20-CV-1247 (W.D. Tex.) (ECF No. 40.)  The 1247 remains pending, however, with no "judicial[] determin[ation]" without right of further appeal at this time.  (Dkt. # 8-2 at 3.)  Without a final ruling determining whether the fraud exception applies, the Court cannot make a holding on whether a breach occurred.  Accordingly, the Court dismisses count 7 as premature, subject to refiling upon resolution of the 1247 action.

CONCLUSION

For the reasons stated above, the Court **ADOPTS IN PART, REJECTS IN PART** U.S. Magistrate Judge Lane's Report and Recommendation. and **GRANTS** Noble Capital's Motion to Dismiss.  (Dkts. # 17, 10.)  Capital Global's claims against Noble Capital are **DISMISSED WITHOUT PREJUDICE**.   Capital Global may amend its breach of contract claim based on the 1247 action (count four) **no later than Monday, August 21, 2023**.

**IT IS SO ORDERED.**

**DATED**: Austin, Texas, July 31, 2023.

_____
David Alan Ezra
Senior United States District Judge

23